## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| Zhejiang UniHome Technology Limited, | § | |
| | § | CIVIL ACTION NO. |
| *Plaintiff,* | § | |
| | § | JURY TRIAL DEMANDED |
| vs. | § | |
| | § | |
| Netvue Technologies Co., Ltd.; and | § | |
| Chuan Chen | § | |
| | § | |
| *Defendants.* | | |

## COMPLAINT

Plaintiff Zhejiang UniHome Technology Co., Ltd. ("UniHome" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Netvue Technologies Co., Ltd. ("Netvue") and Chuan Chen, arising from disputes concerning the design, development, and commercialization of smart bird feeder products ("Smart Bird Feeders"). Upon actual knowledge concerning itself, and upon information and belief as to other matters, UniHome alleges as follows:

## PARTIES

1.      Plaintiff Zhejiang UniHome Technology Co., Ltd. ("UniHome") is a Chinese limited liability company organized and existing under the laws of the People's Republic of China, with its principal place of business at No. 66, Industrial Road, LengShui Town, Pan'an County, Zhejiang Province, China, People's Republic of China.

2.      UniHome was originally established by its founder and Chairman, Truel Chen (also known as CHEN, Wei), in 2011, operating under the name "Zhejiang Aote Craft Factory." The company was formally incorporated under its current name in 2016. UniHome specializes in the design and development, manufacture, and distribution of premium wooden birdhouses and bird

1

feeders. As a premier global supplier for major international retailers, UniHome maintains long-standing strategic partnerships with retail organizations worldwide. UniHome is recognized as the world's leading manufacturer and provider of wooden avian habitats and feeding systems.

3.    UniHome is the original designer and primary manufacturer of products sold through Amazon.com and Walmart.com storefronts, including "TT Nature," "TT Nature Official," "TT Nature Official–Walmart," and "ManWuKangXuan" (collectively, the "UniHome Storefronts"). The UniHome Storefronts operate as independent online retail channels but exclusively offer products designed, developed, manufactured, and supplied by UniHome.

4.    On information and belief, Defendant Netvue Technologies Co., Ltd. ("Netvue") is a Chinese corporation with its principal place of business at Room 1505, West Tower, Skyworth Semiconductor Design Building, No. 18, Gaoxin South Fourth Road, Gaoxin Community, Yuehai Street, Nanshan District, Shenzhen, Guangdong, China. On information and belief, Netvue conducts business in the United States under the trade names "Birdfy" and "Tianherong."

5.    On information and belief, Netvue was established in 2010 and develops intelligent, mobile internet–connected hardware. Further, on information and belief, Netvue sells its Birdfy products through its own website, https://www.birdfy.com, as well as through Amazon.com, Walmart.com, and other online and retail channels in the United States, including in the Commonwealth of Virginia.

6.    Netvue is the named applicant and assignee of U.S. Design Patent Nos. D1,059,694 ("the D'694 Patent"), D1,060,865 ("the D'865 Patent"), and D1,085,564 ("the D'564 Patent") (collectively, "the Patents-in-Suit"). The sole named inventor on all three Patents-in-Suit is Defendant Chuan Chen of Guangdong, China. No UniHome employee is named as an inventor or

co-inventor on any of the Patents-in-Suit, despite UniHome's personnel having conceived the ornamental designs they claim, as discussed below.

7.    Defendant Chuan Chen (also known as "Allen" Chen) is a natural person, citizen, and resident of Guangdong Province, People's Republic of China. On information and belief, at all times relevant to this action, Chuan Chen has served as the Chairman of Netvue. Chuan Chen is named as a defendant in this action in his individual capacity, separate and apart from his role as a corporate officer of Netvue, based on his personal conduct as described below.

8.    Chuan Chen personally executed the inventor's oaths or declarations required under 37 C.F.R. § 1.63 for each of the Patents-in-Suit, attesting under penalty of perjury that he believed himself to be "the original inventor or an original joint inventor of a claimed invention in the application." (*See* Ex. D.) Chuan Chen is a necessary and indispensable party to this action because: (a) UniHome's correction of inventorship claim under 35 U.S.C. § 256 directly concerns his status as the named inventor; (b) he personally executed the oaths and declarations that UniHome alleges were false; (c) he personally communicated the express authorizations upon which UniHome's implied license defense is based; and (d) he personally directed the conduct giving rise to UniHome's state law claims for fraud and tortious interference.

9.    Chuan Chen's personal conduct forms an independent basis for his liability distinct from Netvue's corporate liability. Further, Chuan Chen derived independent personal benefits from his personal conduct, including inventorship credit, enhanced personal reputation in the industry, and potential personal royalty or equity entitlements tied to the Patents-in-Suit, that are distinct from any benefit accruing to Netvue as a corporate entity.

3

**JURISDICTION AND VENUE**

10.     This Court has subject-matter jurisdiction because UniHome's claims raise federal questions arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Patent Act of the United States, 35 U.S.C. §§ 116, 256, 28 U.S.C. §§ 1331 and 1338. This Court also has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 over UniHome's claims arising under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 4 of the Clayton Act, 15 U.S.C. § 15, which provides a private right of action for any person injured in his business or property by reason of an antitrust violation, including the right to recover treble damages, costs of suit, and reasonable attorneys' fees.

11.     This Court has supplemental jurisdiction over UniHome's state law claims brought under the Code of Virginia, pursuant to 28 U.S.C. § 1367, because they arise from the same nucleus of operative fact as UniHome's federal law claims.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Defendants are not residents in the United States and thus may be sued in any judicial district. Venue is additionally proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to UniHome's claims occurred in this District, including Netvue's prosecution of the Patents-in-Suit before the United States Patent and Trademark Office ("USPTO"), located in Alexandria, Virginia.

13.     This Court has personal jurisdiction over Netvue and Chuan Chen pursuant to 35 U.S.C. § 293. Netvue is the assignee and patentee of the Patents-in-Suit, and on information and belief, does not reside in the United States and has not filed in the USPTO a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patents or rights thereunder.

4

14.    Further, Chuan Chen is the sole named inventor on the Patents-in-Suit and, upon information and belief, has not filed within the USPTO a written designation identifying a person residing within the United States authorized to accept service of process or notice of proceeding affecting the Patents-in-Suit. UniHome's claims for correction of inventorship under 35 U.S.C. § 256 directly concern Chuan Chen's status as the named inventor.

15.    Accordingly, this Court may exercise personal jurisdiction over Netvue and Chuan Chen in this action as if they were personally within the jurisdiction of this Court.

16.    Netvue and Chuan Chen are further subject to personal jurisdiction in this District because they have purposefully availed themselves of the rights and privileges of Virginia and the Eastern District of Virginia. Netvue and Chuan Chen reached into Virginia and this District to invoke the benefits and protection of United States patent law, including by applying for and prosecuting patent applications leading to the Patents-in-Suit before the USPTO in Alexandria, Virginia.

17.    In addition, Netvue directly targets business activities toward consumers in Virginia through fully interactive commercial internet stores, including Amazon.com, Walmart.com, and https://www.birdfy.com, through which Virginia residents can purchase Netvue's products. These stores accept payment in U.S. dollars and offer shipping to Virginia. Upon information and belief, Netvue has marketed, offered for sale, and sold bird feeder products embodying the ornamental designs claimed in the Patents-in-Suit within Virginia. Netvue also filed the action styled as *Netvue Technologies Co., Ltd. v. Evergreen Enterprise of Virginia, LLC*, Case No. 1:26cv373 (N.D. Ga.) (the "Georgia Evergreen Action"), against Evergreen Enterprise of Virginia LLC, a Virginia business entity and UniHome's authorized agent, further demonstrating that Netvue's enforcement campaign targets businesses operating in the

Commonwealth of Virginia. Netvue's conduct has caused injury to UniHome within Virginia. The claims asserted herein arise out of and relate to Netvue's activities directed at Virginia.

18. Alternatively, personal jurisdiction exists over Defendants under Federal Rule of Civil Procedure 4(k)(2) based on Defendants' relevant contacts with the United States as a whole. Netvue, under the direct control of Chuan Chen, has commercialized Smart Bird Feeders embodying UniHome's designs and placed them in the stream of commerce, thereby reaching consumers throughout the United States, including Virginia. To the extent Defendants are not subject to the general personal jurisdiction of any one state, their aggregate contacts with the United States subject them to jurisdiction under the federal long-arm statute.

19. An actual, justiciable controversy exists between UniHome and Netvue. On November 25, 2025, Netvue filed a patent infringement action against twenty-three defendants, including the UniHome Storefronts, in *Netvue Technologies Co., Ltd. v. 2024 Beautiful Store, et al.*, Case No. 1:25-cv-06812-SDG (N.D. Ga.) (the "Related Georgia Action"). Netvue alleges that the defendants, including the UniHome Storefronts, infringe the Patents-in-Suit. Although UniHome was not named as a defendant in the Related Georgia Action, UniHome is the sole designer, manufacturer, and supplier of all products sold through the UniHome Storefronts that are accused of infringing the Patents-in-Suit in the Related Georgia Action. Netvue's enforcement campaign directly threatens UniHome's business, impairs its distribution channels, and chills its retail partnerships. UniHome contends that the Patents-in-Suit are invalid for improper inventorship, that inventorship should be corrected to include UniHome personnel, and that UniHome possesses an implied license to sell the accused products. A judicial resolution of these disputes is necessary to protect UniHome's rights.

**THE PATENTS-IN-SUIT**

20.    The D'694 Patent, titled "Bird Feeder," was filed on September 24, 2024, as U.S. Application No. 29/964,496, and issued on January 28, 2025. The D'694 Patent is a continuation of U.S. Application No. 29/909,791, filed August 10, 2023. The sole named inventor of the D'694 Patent is Chuan Chen. The D'694 Patent claims "[t]he ornamental design for a bird feeder as shown and described" in its figures. A true and correct copy of the D'694 Patent is attached hereto as **Exhibit A**.

21.    The D'865 Patent, titled "Bird Feeder," was filed on September 24, 2024, as U.S. Application No. 29/964,495, and issued on February 4, 2025. The D'865 Patent is a continuation of U.S. Application No. 29/909,791, filed August 10, 2023. The sole named inventor of the D'865 Patent is Chuan Chen. The D'865 Patent likewise claims "[t]he ornamental design for a bird feeder as shown and described" in its figures. A true and correct copy of the D'865 Patent is attached hereto as **Exhibit B**.

22.    The D'564 Patent, titled "Bird Feeder," was filed on December 23, 2024, as U.S. Application No. 29/980,072, and issued on July 22, 2025. The D'564 Patent is a continuation of U.S. Application No. 29/964,496, filed on September 24, 2024 and issued as the D'865 Patent, which is a continuation of U.S. Application No. 29/909,791, filed August 10, 2023. The sole named inventor of the D'564 Patent is Chuan Chen. The D'564 Patent claims the ornamental design for a bird feeder as shown and described in its figures. A true and correct copy of the D'564 Patent is attached hereto as **Exhibit C**.

23.    The ornamental designs claimed in the Patents-in-Suit were conceived by UniHome personnel and correspond to design elements embodied in prototypes designed and built by UniHome. All three Patents-in-Suit share a common parent application (the '791 Application), claim the same effective filing date (August 10, 2023), name the same sole inventor (Chuan Chen),

and depict substantially similar ornamental designs for a bird feeder—designs that UniHome had already conceived, reduced to prototypes, and publicly displayed before the earliest filing date.

## UNIHOME'S DESIGN AND DEVELOPMENT OF BIRDFEEDERS

24.     UniHome is a specialized designer and manufacturer of bird-related products, including bird feeders and birdhouses. UniHome has developed deep expertise in designing ornamental and functional wooden avian housing structures over more than a decade of operations. This specialized design knowledge is a core competitive asset.

25.     In late 2022, Netvue's Chairman Chuan Chen contacted UniHome's founder and Chairman Truel Chen to discuss a potential collaboration to develop Smart Bird Feeders with an integrated camera. During these discussions, Chuan Chen admitted that Netvue specialized in security cameras but "knew nothing about bird products." Chuan Chen further acknowledged that he did not know that wood materials could be designed to make bird feeders and lacked the expertise to design bird housing.

26.     The parties discussed and agreed to a division of responsibilities for their collaboration. Based on these discussions, Netvue would develop the camera component and UniHome would design the structure of the Smart Bird Feeders, including all ornamental features of the feeders' housing.

27.     On October 27, 2022, at the outset of the collaboration, Netvue and UniHome executed a confidentiality agreement (the "NDA"). The NDA established the baseline intellectual property framework for the collaboration between UniHome and Netvue and stated that each party retains ownership of its own intellectual property.

28.     In particular, Section 5 of the NDA provides that "all ownership rights, copyrights, patent rights, business information, technical know-how, and other intellectual property rights shall remain with the original owner." Under Section 5 of the NDA, all intellectual property rights

existing prior to the collaboration between UniHome and Netvue remained with the original owner. Further, under Section 5 of the NDA, any intellectual property rights developed during the collaboration between UniHome and Netvue remain with the original owner, including rights in the design of the structure and housing of the Smart Bird Feeders developed during the collaboration.

29.     Between March and May 2023, UniHome's engineers, under the direction of Truel Chen, designed and produced multiple prototype iterations of the Smart Bird Feeder's structure. These prototypes embodied the ornamental design features that Netvue later claimed in the Patents-in-Suit.

30.     ***Smart Bird Feeder Prototype V1.0 (March 2023)***. In approximately March 2023, UniHome independently designed, developed, and built an initial Smart Bird Feeder concept ("Smart Bird Feeder Prototype V1.0"). The Smart Bird Feeder Prototype V1.0 included a central camera housing, sidewall structures, and a bird perch assembly. This prototype was created entirely by UniHome without any input from Netvue regarding ornamental design features. The Smart Bird Feeder Prototype V1.0 is depicted below in Figure 1.

9



**Figure 1**
Smart Bird Feeder Prototype V1.0 (March 2023)

31.     The ornamental features of the Smart Bird Feeder Prototype V1.0 include design elements later claimed in the Patents-in-Suit.

32.     On April 13, 2023, Chuan Chen visited UniHome's facilities and viewed the Smart Bird Feeder Prototype V1.0. Chuan Chen was impressed by UniHome's expertise in developing smart bird feeders and other ecological monitoring designs and proposed that UniHome design and develop a Smart Bird Feeder for Netvue.

33.     ***Smart Bird Feeder Prototype 2.0 (April 2023).*** In approximately April 2023, UniHome independently designed, developed, and built another prototype Smart Bird Feeder ("Smart Bird Feeder Prototype V2.0"). The Smart Bird Feeder Prototype V2.0 is depicted below in Figure 2.

10



**Figure 2**
Smart Bird Feeder Prototype V2.0 (April 2023)

34.     The ornamental features of the Smart Bird Feeder Prototype V2.0 include design elements later claimed in the Patents-in-Suit.

35.     UniHome publicly demonstrated the Smart Bird Feeder Prototype V2.0 at the 133rd Canton Fair in Guangzhou City, Guangdong Providence, China, from April 23-27, 2023. An image of an invitation to the 133rd Canton Fair from April 23-27, 2023 is shown below in Figure 3a. Additionally, Figures 3b-3c are photographs of UniHome's booth at the 133rd Canton Fair. As shown in Figure 3c, the Smart Bird Feeder Prototype V2.0 was publicly demonstrated and displayed in UniHome's booth.



**Figure 3a**
Invitation to 133rd Canton Fair on April 23-27, 2023



**Figure 3b**
Photograph of UniHome's booth at the 133rd Canton Fair



**Figure 3c**
Photograph of the Smart Bird Feeder Prototype V2.0 displayed at the 133rd Canton Fair

36.    On April 26, 2023, after seeing the Smart Bird Feeder Prototype V1.0 and Smart Bird Feeder Prototype V2.0, Netvue's Deputy General Manager, Youle Hu, provided feedback to UniHome regarding the prototypes. In particular, Mr. Hu suggested two functional problems for UniHome to address: (1) preventing birds from perching directly on the feed tray; (2) preventing the feed from getting between the acrylic panel and the camera.

12

37.     Mr. Hu did not make any recommendations or suggestions related to the ornamental design of the structure or housing of the Smart Bird Feeders. In fact, Mr. Hu expressly acknowledged that "the actual solution will depend on your design, as long as the core functional issues can be addressed." Mr. Hu's statement confirmed that his input was limited solely to adjusting the rectangle to position a camera, and that responsibility and ownership of the birdhouse design remained with UniHome.

38.     ***Smart Bird Feeder Prototype 3.0 (April–May 2023).*** In approximately April 2023, UniHome independently designed, developed, and built a third prototype Smart Bird Feeder ("Smart Bird Feeder Prototype V3.0"). The Smart Bird Feeder Prototype V3.0 included a single bird perch configuration and a modified camera housing designed to adjust camera positioning. The Smart Bird Feeder Prototype V3.0 is shown below in Figure 4.



**<u>Figure 4</u>**
Smart Bird Feeder Prototype V3.0 (April 2023)

39.     The ornamental features of the Smart Bird Feeder Prototype V3.0 include design elements later claimed in the Patents-in-Suit.

40.     During the development of this prototype, UniHome's engineers addressed Netvue's recommendations related to the camera's functionality. In particular, UniHome made modifications related to the camera's location and stability.

41.     On around May 3, 2023, UniHome shipped one sample of the Smart Bird Feeder Prototype V3.0 to Netvue.

42.     After receiving the Smart Bird Feeder Prototype V3.0 from UniHome, Netvue's Youle Hu provided feedback to UniHome related to potential water accumulation and camera angle. Mr. Hu's recommendations were again limited strictly to functional issues, not to the ornamental design of the structure or housing of the Smart Bird Feeder Prototype V3.0.

43.     ***Smart Bird Feeder Prototype V3.1 (May 2023).*** In about May 2023, UniHome independently designed, developed, and built a modified version of the prior prototype ("Smart Bird Feeder Prototype V3.1"). This version incorporated bamboo as the material and added the Netvue "Birdfy" logo. The Smart Bird Feeder Prototype V3.1 is shown below in Figure 5.



**Figure 5**
Smart Bird Feeder Prototype V3.1 (May 2023)

14

44.     The ornamental features of the Smart Bird Feeder Prototype V3.1 include design elements later claimed in the Patents-in-Suit.

45.     ***Smart Bird Feeder Prototype V4.0 (Late May 2023).*** The parties finalized the prototype by incorporating dimensional adjustment, including a flat roof, taller housing, and asymmetrical rectangular side panels ("Smart Bird Feeder Prototype V4.0"). In its schematics dated May 26, 2023, Netvue explicitly instructed that "all other dimensions and styles shall remain consistent with the original dimensions and proposed designs, without further changes." On May 29, 2023, parties concurred on the final design of Smart Bird Feeder Prototype V4.0. UniHome later provided these physical prototypes and manufactured the housing for Netvue.



**Figure 6**
Smart Bird Feeder Prototype V4.0 (late May 2023)

46.     The ornamental features of the Smart Bird Feeder Prototype V4.0 include design elements later claimed in the Patents-in-Suit.

47.    Throughout the entire development process of the Smart Bird Feeders from the Smart Bird Feeder Prototype V1.0 through the Smart Bird Feeder Prototype V4.0, all design and development of the ornamental features of the products' structure and housing were created exclusively by UniHome. Netvue's contributions to the Smart Bird Feeders were limited to functional feedback concerning camera placement, water resistance, and camera angle. At no point did Netvue or Chuan Chen independently conceive any of the ornamental design features of the birdhousing, including the housing shape, proportions, wooden construction, perch design, sidewall configurations, roof configuration, panel geometry, or overall aesthetic appearance that are the subject of the design patent claims in the Patents-in-Suit.

## NETVUE AND CHUAN CHEN IMPROPERLY OBTAIN PATENT PROTECTION ON UNIHOME'S DESIGNS AND SMART BIRD FEEDER PROTOTYPES

48.    On August 10, 2023, Netvue filed U.S. Application No. 29/909,791 ("the '791 Application"), which issued as U.S. Design Patent No. D1,075,165 ("the D165 Patent") on May 13, 2025 and claims "[t]he ornamental design for a bird feeder with a camera" as shown in the figures therein. The '791 Application is the parent application that gave rise to the Patents-in-Suit. As explained above, the D'694 Patent and the D'865 Patent are continuations of the '791 Application. The D'564 Patent is a continuation of the application that issued as the D'865 Patent. Thus, the Patents-in-Suit are related to and stem from the '791 Application.

49.    The '791 Application was filed months after UniHome had already designed, built, and delivered Smart Bird Feeder prototypes to Netvue, including Smart Bird Feeder Prototype V1.0, Smart Bird Feeder Prototype V2.0, Smart Bird Feeder Prototype V3.0, Smart Bird Feeder Prototype V3.1, and Smart Bird Feeder Prototype V4.0.

50.    The ''791 Application listed Chuan Chen as the sole inventor and Netvue as the sole applicant and assignee.

16

51.     Netvue did not notify Truel Chen or seek UniHome's permission to patent these designs.

52.     Netvue did not list Truel Chen or any other UniHome employee as an inventor or co-inventor, despite the fact that UniHome's personnel had conceived and developed the claimed ornamental designs.

53.     The D'694 Patent issued on January 28, 2025, as a continuation of the parent '791 Application. The D'865 Patent issued on February 4, 2025, as a continuation of the '791 Application. The D'564 Patent issued on July 22, 2025, as a continuation of the D'865 Patent. All three Patents-in-Suit claim the effective filing date of the '791 Application on August 10, 2023, and list Chuan Chen as the sole inventor.

54.     UniHome personnel contributed to the conception of the ornamental designs claimed in the Patents-in-Suit. Specifically, UniHome's engineers, under the direction of Truel Chen, conceived the overall ornamental appearance of the bird feeder designs, the visual impression of the article's design as a whole, including the roof configuration, housing profile, panel geometry, perch design, sidewall configurations, and overall visual proportions.

55.     The Patents-in-Suit depict a bird feeder having a forward-extending rectangular roof, a generally rectangular housing body, rectangular side panels, and a centrally positioned vertical camera enclosure with a front-facing opening. Beneath the housing, the design includes a forward-projecting rectangular platform and a perch structure extending laterally across the front of the platform, supported by side members.

56.     As reflected in the comparison chart below, these same rectangular roof forms, rectangular housing bodies, centrally positioned vertical camera enclosures, rectangular side panels on the left and right sides, forward-projecting platforms, and front perch structures appear

17

in UniHome's Smart Bird Feeder Prototypes V1.0 through V4.0 prior to August 10, 2023. More specifically, the solid-line ornamental features depicted in the D'694, D'865 , and D'564 Patents, including the shape of the central camera enclosure, the rectangular side panels, and the perch structure positioned beneath the housing, are visibly embodied in the earlier prototypes and were present before Netvue's patent filings.

| UniHome Prototype V4.0 | D'694 Patent | D'865 Patent | D'564 Patent |
|---|---|---|---|



## NETVUE AND CHUAN CHEN EXPRESSLY AUTHORIZED UNIHOME TO SELL SMART BIRD FEEDERS

57.     Netvue expressly authorized UniHome to promote and sell Smart Bird Feeders developed through the parties' collaboration, creating an implied license that allows UniHome and its distributors, including the UniHome Storefronts, to sell Smart Bird Feeders.

58.     In or around September 2022, at the outset of the collaboration between Netvue and UniHome to develop Smart Bird Feeders, Chuan Chen wrote to Truel Chen: "Once we complete the development, you can also promote it through your channels."

59.     In or around June 2023, Chuan Chen personally instructed and encouraged UniHome to sell Smart Bird Feeders to retailers such as Costco through its authorized agent Evergreen Enterprise of Virginia LLC ("Evergreen"). Chuan Chen confirmed in writing: "Whose

housing to use is up to you, as long as you think it's OK … If you switch to others, we'll still support you" and "using your brand for the complete set … that's definitely fine."

60.     Netvue's authorization, conveyed by Chuan Chen, reasonably led UniHome to believe it possessed the right to manufacture and sell Smart Bird Feeders incorporating UniHome's own designs through its own commercial channels, including UniHome Storefronts.

61.     Consistent with this authorization, Netvue sold UniHome cameras for use in UniHome's Smart Bird Feeders that are sold through the UniHome Storefronts. UniHome purchased these cameras directly from Netvue under specific purchase orders as recently as November 2023.

62.     Netvue, directed and arranged by Chuan Chen, also provided technical support to UniHome in developing the mobile application for the Smart Bird Feeders, ensuring compatibility with Netvue's cameras. Netvue provided technical support and handled customer-reported technical issues as recently as February 2025.

63.     Additionally, UniHome manufactured bird feeder housings for Netvue from June 2023 through December 2025, further confirming the ongoing commercial relationship and the mutual understanding that both parties would sell products incorporating UniHome's designs.

64.     Netvue and Chuan Chen were aware that UniHome was manufacturing and selling Smart Bird Feeders through the UniHome Storefronts throughout this period and took no action to object, revoke its authorization, or assert infringement—until filing the Related Georgia Action in November 2025.

**CHUAN CHEN'S PERSONAL CONCEALMENT AND MISREPRESENTATIONS**

65.     On information and belief, on or about August 10, 2023, Chuan Chen personally caused to be filed, or directed the filing of the '791 Application with the USPTO, listing himself as the sole inventor of the ornamental design that he knew had been conceived by UniHome's

engineers. At the time of this filing, Chuan Chen had personal, first-hand knowledge that: (a) he had visited UniHome's facilities on April 13, 2023, and viewed UniHome's independently designed prototypes; (b) UniHome's engineers, under the direction of Truel Chen, had conceived the ornamental design features of Prototypes V1.0 through V4.0 between March and May 2023; (c) Netvue's own Deputy General Manager, Youle Hu, had expressly acknowledged that the ornamental design decisions were UniHome's; and (d) Netvue's contributions were limited to functional feedback. Despite this knowledge, Chuan Chen personally executed, or caused to be executed, inventor's oaths or declarations under 37 C.F.R. § 1.63 attesting that he is the original inventor of the claimed designs. *See* **Exhibit D**.

66.     Critically, Chuan Chen did not disclose to Truel Chen or to anyone at UniHome that he was filing patent applications claiming sole inventorship over UniHome's ornamental designs. To the contrary, after August 2023, Chuan Chen continued to: (a) sell cameras to UniHome for incorporation into Smart Bird Feeders; (b) provide technical support; and (c) maintain the collaborative relationship as if nothing had changed. At no point did Netvue notify UniHome that it was seeking exclusive patent rights over designs that UniHome engineers had conceived. This concealment was sustained over a period of more than two year—from the filing date in August 2023 until Netvue's filing of the Related Georgia Action in November 2025.

67.     Chuan Chen's concealment was material. Had UniHome known that Chuan Chen was seeking to patent UniHome's designs as his own sole invention, UniHome would not have continued to manufacture bird feeder housings for Netvue, would not have continued to share proprietary design and manufacturing information with Netvue, and would have taken immediate steps to protect its intellectual property rights.

68.     On November 28, 2024—approximately fifteen months after Netvue filed the

parent '791 Application—Netvue and UniHome executed a Product Design and Intellectual Property Agreement (the "IP Agreement"). The IP Agreement's Section I, Clause 1 describes the parties' intended workflow. Specifically, Netvue provides design requests, and UniHome "shall perform initial designs of the product shell's structure and appearance" based on sales channel and material requirements, providing multiple design options for Netvue to select. Following execution of the IP Agreement, Netvue has not selected any UniHome design relating to or covered by the Patents-in-Suit.

69.    At no point before or during the negotiation and execution of the IP Agreement did Netvue disclose to UniHome that it had already filed the parent '791 Application in August 2023, listing Chuan Chen as the sole inventor. The IP Agreement does not reference, disclose, or acknowledge the pending patent applications or the Patents-in-Suit. UniHome executed the IP Agreement without knowledge that Netvue had already claimed exclusive patent rights over UniHome's own designs.

## NETVUE'S RELATIONSHIP OF TRUST AND CONFIDENCE WITH UNIHOME

70.    The collaborative relationship between UniHome and Netvue, as described above, was not an arm's-length commercial transaction between strangers. Rather, it was a relationship founded on mutual trust and confidence, in which each party reposed special confidence in the other and committed to act with due regard for the other's interests in connection with the joint development and commercialization of Smart Bird Feeders.

71.    Netvue approached UniHome specifically because Netvue lacked the specialized expertise that UniHome possessed. Netvue's Chairman Chuan Chen admitted that Netvue "knew nothing about bird products" and did not know that wood materials could be used to make bird feeders. UniHome agreed to share its proprietary design expertise, product development

capabilities, and manufacturing knowledge with Netvue based on the understanding that the parties were working together toward a shared commercial objective. UniHome's willingness to share its core competitive knowledge with Netvue was premised on the trust that Netvue would not use that knowledge to claim exclusive rights over UniHome's designs or to exclude UniHome from the market for the jointly developed products.

72.     Netvue reinforced this relationship of trust and confidence through its course of conduct, including: (a) expressly authorizing UniHome to sell Smart Bird Feeders through its own channels; (b) selling cameras to UniHome for incorporation into the jointly developed products; (c) providing ongoing technical support for the mobile application used by UniHome's customers; (d) manufacturing bird feeder housings through UniHome; and (e) making no objection to UniHome's sales of Smart Bird Feeders for more than two years. This course of conduct fostered UniHome's reasonable expectation that the parties were engaged in a collaborative venture in which both parties would benefit from the jointly developed designs.

73.     Netvue occupied a position of trust relative to UniHome with respect to any intellectual property filings relating to the jointly developed Smart Bird Feeders. UniHome shared its proprietary designs with Netvue in confidence and for the limited purpose of the parties' joint development project. Netvue, as the party responsible for the technology component and as a larger enterprise with an established U.S. patent prosecution practice, was in a position of superior knowledge regarding U.S. patent law and intellectual property protection strategies. UniHome relied on Netvue to act in good faith and not to appropriate for itself exclusive rights over designs that UniHome had conceived and shared in the context of the collaborative relationship.

74.     Netvue breached this relationship of trust and confidence by secretly filing design patent applications that claimed UniHome's designs as the sole invention of Chuan Chen, without

22

notifying UniHome, without crediting UniHome's contributions, and without seeking UniHome's consent. Netvue continued to maintain the collaborative relationship—selling cameras to UniHome and providing technical support—while concealing that it had sought to claim exclusive patent rights over UniHome's work. Netvue then weaponized these patents to file the Related Georgia Action against UniHome's own storefronts.

### NETVUE FILED AN INFRINGEMENT ACTION AGAINST UNIHOME'S STOREFRONTS

75.     On November 25, 2025, Netvue filed the Related Georgia Action in the United States District Court for the Northern District of Georgia, asserting twenty-three defendants, including the UniHome Storefronts. Netvue employed aggressive "Schedule A" litigation tactics—a procedure designed for use against anonymous foreign counterfeiters—despite UniHome having been Netvue's own collaborative development partner and the party that designed the very products at issue. .

76.     In the Related Georgia Action, Netvue alleged that it "has not granted a license or any other form of permission to Defendants with respect to the patent designs or the Patents-in-Suit." This allegation is directly contradicted by the documented written authorizations from Chuan Chen, the camera supply arrangements, and the ongoing technical support described above.

77.     On February 9, 2026, the UniHome Storefronts filed a Motion to Sever and Dismiss in the Related Action (Dkt. 70), supported by the Declaration of Truel Chen (Dkt. 70-1), setting forth the unique collaborative relationship between UniHome and Netvue and the affirmative defenses of improper inventorship and implied license. The court in the Related Georgia Action had previously denied Netvue's *ex parte* temporary restraining order, finding that Netvue had failed to provide specific facts showing the defendants were interrelated or had a "logical relationship."

23

78.     Netvue's allegations and litigation conduct have interfered with UniHome's business operations, created commercial uncertainty regarding the continued sale and distribution of UniHome's Smart Bird Feeders, and caused reputational harm within the marketplace by associating UniHome with anonymous, unrelated counterfeit sellers.

## RELEVANT MARKET AND COMPETITIVE EFFECTS

79.     The relevant product market for UniHome's antitrust claims is the market for smart bird feeders with integrated cameras sold in the United States (the "Relevant Market"). Smart bird feeders with integrated cameras are a distinct product category that combines ornamental bird feeder housing with embedded camera technology and companion mobile applications for real-time bird observation and identification. Consumers seeking these products have specific functional and aesthetic expectations, including weather-resistant housing, camera-optimized design geometry, and bird-attracting features. From the demand side, consumers who wish to observe and identify birds in real time through a mobile application cannot substitute a traditional bird feeder (which lacks a camera), a standalone outdoor camera (which lacks bird-attracting housing design), or a general wildlife camera (which is not optimized for bird observation), such that a hypothetical monopolist controlling all smart bird feeders with integrated cameras could profitably raise prices without customers shifting to these alternatives. There are no reasonable substitutes for the combination of ornamental housing design and integrated camera technology that defines this product category.

80.     The relevant geographic market is the United States, where Netvue markets and sells Birdfy-branded Smart Bird Feeders through Amazon.com, Walmart.com, https://www.birdfy.com, and other channels, and where UniHome sells competing Smart Bird Feeders through the UniHome Storefronts and other retail partners.

81.    Upon information and belief, Netvue possesses market power, or at minimum a dangerous probability of achieving monopoly power, in the Relevant Market. Netvue has leveraged its market position through a systematic campaign of aggressive patent enforcement against competitors. In addition to the Related Georgia Action, which targeted twenty-three defendants, Netvue has filed at least three other "Schedule A" patent infringement actions asserting similar design patents against large batches of defendants, employing the same mass–joinder litigation tactics to sweep legitimate competitors out of the market. On November 14, 2025, Netvue filed an infringement action against five defendants, in *Netvue Technologies Co., Ltd. v. Nafnti Official et al.*, Case No. 1:25cv14027 (N.D. Ill.) (the "Illinois Nafnti Action"); On December 9, 2025, Netvue filed an infringement action against 4 defendants, in *Netvue Technologies Co., Ltd. v. Gooding Store et al.*, Case No. 1:25cv14931 (N.D. Ill.) (the "Illinois GoodingStore Action"); On December 12, 2025, Netvue filed an infringement action against 15 defendants, in *Netvue Technologies Co., Ltd. v. Kingloong-US et al.*, Case No. 1:25cv15102 (N.D. Ill.) (the "Illinois Kingloong Action").

82.    On January 21, 2026, Netvue filed the Georgia Evergreen Action, a separate patent infringement action against Evergreen, a business entity in the Commonwealth of Virginia, asserting a cause of action based on the Patents-in-Suit. *See Netvue Technologies Co., Ltd. v. Evergreen Enterprise of Virginia, LLC*, Case No. 1:26cv373 (N.D. Ga.). Evergreen has been an active, long-term business partner of UniHome and has served as UniHome's authorized agent for sales to major U.S. retailers. By targeting UniHome's downstream distribution partners, Netvue's enforcement campaign demonstrates a deliberate strategy to encircle and eliminate UniHome as a competitor in the Relevant Market at every level of the distribution chain. The Patents-in-Suit, if valid and enforceable, would give Netvue the exclusive right to make, use, and sell bird feeders

25

having the ornamental design common to substantially all smart bird feeder products in the Relevant Market.

83.    Netvue's enforcement of the Patents-in-Suit has had, and continues to have, anticompetitive effects in the Relevant Market. The Related Georgia Action targeted twenty-three defendants, many of whom sell smart bird feeders in competition with Netvue. By asserting fraudulently obtained design patents against a broad swath of competitors, Netvue is attempting to eliminate competition in the Relevant Market and to establish exclusive control over smart bird feeders.

## COUNT I: CORRECTION OF INVENTORSHIP OF THE PATENTS-IN-SUIT
### (Against Netvue and Chuan Chen)

84.    UniHome re-alleges and incorporates by reference paragraphs 1 through 83 above as if fully set forth herein.

85.    The Patents-in-Suit currently identify Chuan Chen as the sole inventor. This designation is incorrect.

86.    UniHome personnel—including Truel Chen, Youting Zhu, Lijuan Zhu, and Yun Shi—contributed to the conception of the ornamental designs claimed in the Patents-in-Suit. Their contributions were significant in quality when measured against the full scope of the claimed designs. Indeed, the entire ornamental design of the birdhouse housing—the subject of each design patent claim—was conceived by UniHome's personnel. UniHome's contributions were not mere suggestions or modifications to an existing Netvue design; UniHome conceived the complete ornamental appearance of the bird feeder housing from the ground up.

87.    Despite these contributions, the Patents-in-Suit fail to identify the relevant UniHome personnel as inventors or co-inventors. The error in inventorship was not the result of deceptive intention on the part of UniHome. UniHome's personnel were unaware at the time that

26

Chuan Chen was filing patent applications claiming sole inventorship over designs they had conceived, and therefore had no opportunity—and no reason—to engage in any deceptive conduct regarding the inventorship designation.

88.    There is an actual, substantial, immediate, and justiciable controversy between UniHome and Netvue regarding the inventorship of the Patents-in-Suit. Netvue has asserted the Patents-in-Suit against the UniHome Storefronts in the Related Georgia Action and against UniHome's authorized agent Evergreen in the Georgia Evergreen Action, creating a concrete and immediate threat to UniHome's business. A judicial declaration is appropriate and necessary to determine the parties' respective rights.

89.    Pursuant to 35 U.S.C. §§ 116 and 256, UniHome is entitled to correction of inventorship of the Patents-in-Suit to properly name Truel Chen and/or other UniHome employees as co-inventors, or, if the evidence supports it, as the sole inventors. Under 35 U.S.C. § 116, when an invention is made by two or more persons jointly, they shall apply for a patent jointly; and each must be listed as a joint inventor. UniHome's personnel qualify as joint inventors of the ornamental designs claimed in the Patents-in-Suit because they conceived those designs.

90.    Correction of inventorship would establish UniHome's co-ownership of the Patents-in-Suit, entitling UniHome to independently practice and license the patented designs without Netvue's consent.

91.    UniHome reserves the right to assert additional claims or theories concerning inventorship after conducting discovery.

## COUNT II: DECLARATORY JUDGMENT OF OWNERSHIP OF THE PATENTS-IN-SUIT
### (Against Netvue and Chuan Chen)

92.    UniHome re-alleges and incorporates by reference paragraphs 1 through 91 above as if fully set forth herein.

27

93. This count is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

94. Based on the allegations in this complaint, there is a substantial, continuing, and justiciable controversy between UniHome and Netvue concerning the ownership of the Patents-in-Suit and any other U.S. and/or foreign patents, patent publications, or patent applications claiming priority to or through the Patents-in-Suit (i.e., any "related patent."). This controversy is concrete and immediate: Netvue has asserted the Patents-in-Suit against the UniHome Storefronts in the Related Georgia Action and against Evergreen in the Georgia Evergreen Action, directly threatening UniHome's ability to sell products embodying its own designs.

95. Netvue derived the subject matter of the Patents-in-Suit and any related patent in whole or in part from UniHome's Prototypes V1.0 through V4.0. Chuan Chen did not independently conceive any of the claimed ornamental design features. Therefore, UniHome, not Netvue, is the true owner (or at least a joint owner) of the Patents-in-Suit and any related patent. Further, Section 5 of the NDA provides that "all ownership rights, copyrights, patent rights, business information, technical know-how, and other intellectual property rights shall remain with the original owner." Because UniHome is the original creator of the ornamental designs claimed in the Patents-in-Suit, Section 5 of the NDA independently establishes UniHome's ownership of the intellectual property rights in those designs. Netvue's improper assertion of ownership for the Patents-in-Suit and any related patent is causing damage and injury to UniHome, and a prompt declaration of each party's rights is appropriate and necessary at this time.

96. UniHome therefore seeks a declaratory judgment finding that: (a) UniHome is the sole, or alternatively a joint, owner of all right, title, and interest in the Patents-in-Suit and any related patent; (b) UniHome has the right to control prosecution of any such patents, and that

28

Netvue has the right to file in the future and (d) Netvue is obligated to assign to UniHome all right, title, and interest in any related U.S. and foreign patent applications and patents issuing henceforth.

97.     UniHome reserves the right to assert additional claims or theories concerning ownership after conducting discovery.

## COUNT III: DECLARATORY JUDGMENT
## OF UNENFORCEABILITY OF THE PATENTS-IN-SUIT
### (Against Netvue and Chuan Chen)

98.     UniHome re-alleges and incorporates by reference paragraphs 1 through 97 above as if fully set forth herein.

99.     This count is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

100.     As evidenced by the allegations in this complaint, there is a substantial, continuing, and justiciable controversy between UniHome and Netvue concerning Netvue's actions in the prosecution of the Patents-in-Suit and any related patent.

101.     If the Court declines to issue declarations that UniHome's personnel are the correct inventors of the Patents-in-Suit and that UniHome is the owner of all right, title, and interest in those patents, then UniHome alternatively seeks a declaration that the Patents-in-Suit are unenforceable due to inequitable conduct before the USPTO. Netvue and each of the named inventor failed to meet their duty of candor and good faith to the USPTO by wrongfully filing the Patents-in-Suit applications and any related patents based on UniHome's Prototypes V1.0 through V4.0. In these filings, Netvue and Chuan Chen submitted, in bad faith, oaths to the U.S. Patent and Trademark Office attesting that they were allegedly the original inventors of the claimed invention. These oaths did not include any reference to UniHome's Prototypes V1.0 through V4.0 nor did they give any credit to the UniHome employees who initially designed and conceived the ornamental features of the Smart Bird Feeder. The misrepresentations and omissions were but-for material to the issuance of the Patents-in-Suit: the Patents-in-Suit would not have issued but for

29

Netvue's and Chuan Chen's failure to disclose UniHome's design contributions, UniHome's prior public disclosure at the 133rd Canton Fair, and the true identity of the inventors. Notably, the USPTO's own prosecution records identify as prior art a "TT Nature Smart Bird Feeder" sold through the UniHome Storefronts—a product designed and manufactured by UniHome—yet Netvue never disclosed to the USPTO that the TT Nature product was in fact a UniHome product or that the designs in the patent applications originated with UniHome's engineers. Thus, Netvue's and Chuan Chen's actions during the prosecution of the Patents-in-Suit and related patents constitute inequitable conduct and render all claims of the Patents-in-Suit and any related patent unenforceable.

102.    Chuan Chen is individually liable for inequitable conduct before the USPTO. As the sole named inventor on the Patents-in-Suit, Chuan Chen owed a personal duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56. This duty is personal to the inventor and cannot be delegated to or discharged by the corporate assignee. Chuan Chen personally breached this duty by: (a) executing inventor's oaths or declarations under 37 C.F.R. § 1.63 that he knew were false, attesting that he was the original inventor or an original joint inventor of ornamental designs that were conceived by UniHome's engineers; (b) failing to disclose to the USPTO material prior art, specifically UniHome's Prototypes V1.0 through V4.0 and UniHome's public disclosure of Prototype V2.0 at the 133rd Canton Fair in April 2023, which constitutes prior art under 35 U.S.C. § 102; (c) failing to disclose to the USPTO that the "TT Nature Smart Bird Feeder" identified in the prosecution record as prior art was in fact a UniHome product incorporating designs conceived by UniHome; and (d) failing to disclose to the USPTO the contributions of UniHome's personnel to the conception of the claimed ornamental designs. Chuan Chen's conduct was deliberate and

30

undertaken with specific intent to deceive the USPTO in order to obtain patents to which neither he nor Netvue was entitled.

## COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### (Against Netvue and Chuan Chen)

103.    UniHome re-alleges and incorporates by reference paragraphs 1 through 102 above as if fully set forth herein.

104.    UniHome has maintained valid, ongoing business relationships through the UniHome Storefronts identified in the Related Georgia Action. Through these storefronts, UniHome has continuously sold Smart Bird Feeders designed and manufactured by UniHome. These business relationships were supported by ongoing purchase agreements, established course of dealings, and repeat purchase orders.

105.    Based on these established business relationships, UniHome had a reasonable probability of continued economic benefit, including future purchase opportunities and sustained distribution consistent with prior transactions and sales performance.

106.    In addition to the UniHome Storefronts, UniHome maintained commercial relationships with identifiable retail partners, including national retailers such as Costco. These relationships were supported by ongoing communications, established course of dealing, repeat purchase orders, and sales activities undertaken with Netvue's express written support.

107.    As a result of these established business relationships, UniHome likewise had a reasonable probability of continued economic benefit within those retail channels, including future purchase opportunities and sustained distribution consistent with prior transactions and sales performance.

108.    Netvue had actual knowledge of UniHome's ongoing storefront sales and its commercial relationships with identifiable retail partners. Netvue expressly authorized UniHome

31

to promote and sell Smart Bird Feeders, provided written support for UniHome's sales efforts, sold camera components used in Smart Bird Feeders, supplied technical support and application integration assistance, and continued to supply components and services while aware that UniHome was manufacturing and selling Smart Bird Feeders through its distribution channels and retail partners.

109.    Despite this knowledge and prior course of conduct, Netvue intentionally undertook actions designed to interfere with UniHome's business relationships and commercial expectancies by filing the Related Georgia Action against the UniHome Storefronts, thereby disrupting UniHome's sales channels and casting doubt upon UniHome's right to continue selling Smart Bird Feeders.

110.    Netvue's conduct constitutes intentional interference with UniHome's business relationships and reasonable economic expectancies. Under Virginia law, tortious interference with business expectancy requires: (1) the existence of a business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the use of improper methods; and (5) resulting damages. As alleged herein, all five elements are satisfied.

111.    Netvue's interference was accomplished through improper methods, including asserting patent infringement claims based on fraudulently obtained patents against the UniHome Storefronts, despite knowledge of UniHome's substantial contributions to the designs claimed in the Patents-in-Suit, and knowingly misrepresenting in the Related Georgia Action that "[Netvue] has not granted a license or any other form of permission to Defendants with respect to the patent designs or the Patents-in-Suit," notwithstanding its prior written authorizations and the implied

32

license permitting UniHome to manufacture and sell Smart Bird Feeders through the UniHome Storefronts.

112.    Absent Netvue's tortious interference, UniHome had a reasonable certainty of continued economic benefit from its established business relationships and distribution channels. UniHome's sales through the UniHome Storefronts and its retail partnerships, including its relationship with Costco facilitated by Evergreen, were ongoing, supported by established course of dealing and repeat purchase orders, and were undertaken with Netvue's express written authorization. These relationships would have continued to generate revenue and commercial opportunities for UniHome but for Netvue's wrongful interference.

113.    The Related Georgia Action was not a legitimate or good-faith enforcement of valid patent rights, but rather a bad-faith attempt to disrupt UniHome's existing sales channels, create uncertainty among UniHome's retailers and customers, and impair UniHome's ongoing business relationships.

114.    As a direct and proximate result of Netvue's tortious interference, UniHome has suffered, continues to suffer, and is entitled to recover, actual, consequential, and special damages, including but not limited to lost revenue, lost distribution opportunities, disruption of established distribution channels and retailer relationships, harm to reputation and customer goodwill, as well as any other relief the Court deems just and proper, including punitive damages to deter similar misconduct.

115.    Chuan Chen is individually liable for tortious interference with UniHome's business relationships. Under Virginia law, a corporate officer who personally participates in or directs tortious conduct is individually liable for that conduct, and such liability arises from the individual's own actions without the need to pierce the corporate veil. *See Tran v. Indus. Dev.*

33

*Auth. of Town of Front Royal*, No. 0277-23-4, 2024 WL 4439029, at \*6 (Va. Ct. App. Oct. 8, 2024); *see also C. F. Tr., Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 9 (2003) (recognizing that the corporate form will not shield individuals who use it to "perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage."). Chuan Chen personally directed the above-mentioned conduct that interfered with UniHome's business relationships. Chuan Chen's personal participation in these acts renders him individually liable for the resulting interference with UniHome's business relationships and economic expectancies.

## COUNT V: ACTUAL FRAUD
### (Against Chuan Chen)

116.    UniHome re-alleges and incorporates by reference paragraphs 1 through 115 above as if fully set forth herein.

117.    This Count is asserted against Defendant Chuan Chen in his individual capacity for actual fraud under Virginia common law.

118.    Chuan Chen made false representations of present material facts to UniHome. Specifically, and with the particularity required by Federal Rule of Civil Procedure 9(b):

119.    In or around September 2022, at the outset of the collaboration, Chuan Chen wrote to Truel Chen: "Once we complete the development, you can also promote it through your channels." This representation was false, or became false, because Chuan Chen subsequently filed patent applications claiming sole inventorship over the jointly developed designs and ultimately used those patents to sue UniHome's storefronts for selling the very products Chuan Chen had authorized UniHome to sell.

120.    In or around June 2023, Chuan Chen personally confirmed in writing: "Whose housing to use is up to you, as long as you think it's OK" and "using your brand for the complete set … that's definitely fine." This representation affirmed UniHome's ownership of the bird feeder

34

housing design and authorized UniHome to sell Smart Bird Feeders under its own brand. This representation was false, or became false, because Chuan Chen had already directed the filing of patent applications claiming sole inventorship and exclusive rights over the designs that he was simultaneously authorizing UniHome to commercialize.

121. After August 10, 2023, Chuan Chen continued to engage in the collaborative relationship with UniHome—selling cameras, providing technical support, and manufacturing bird feeder housings through UniHome—without disclosing that he had filed patent applications claiming sole inventorship over UniHome's designs. Chuan Chen's continued course of dealing constituted an implicit representation that the collaborative relationship remained intact and that Netvue was not seeking to claim exclusive patent rights over designs that UniHome had conceived.

122. Chuan Chen also committed fraud by omission. Given the collaborative relationship and the ongoing course of dealing between the parties, Chuan Chen had a duty to disclose material facts to UniHome, in particular the fact that he was seeking to patent UniHome's designs as his sole invention. Chuan Chen's duty to disclose arose from: (a) the confidential relationship between the parties, as established by the NDA and the ongoing collaborative venture; (b) Section 5 of the NDA, which provides that intellectual property rights remain with the original owner, creating an affirmative obligation not to claim rights over the other party's intellectual property without disclosure; and (c) Chuan Chen's active concealment of the patent filings while continuing to engage in the collaborative relationship, which created a duty to correct the false impression that the relationship remained intact and that no adverse intellectual property claims were being pursued. Chuan Chen deliberately concealed such facts from UniHome, maintained the appearance of a collaborative relationship with UniHome, and secretly built a patent portfolio to be weaponized against UniHome.

123. Chuan Chen made the foregoing representations and omissions intentionally and knowingly. Chuan Chen had actual, personal knowledge that UniHome's engineers had conceived the ornamental designs at issue.

124. UniHome reasonably relied on Chuan Chen's representations and on the absence of disclosure regarding the patent filings. UniHome had no reason to suspect that its collaborative partner's Chairman was secretly patenting UniHome's own designs. In reliance on Chuan Chen's representations and conduct, UniHome: (a) continued to design and manufacture bird feeder housings for Netvue; (b) continued to share proprietary design specifications with Netvue; (c) invested substantial resources in developing and commercializing Smart Bird Feeders through its own channels.

125. As a direct and proximate result of Chuan Chen's actual fraud, UniHome has suffered damages, including but not limited to: (a) loss of UniHome's rightful inventorship credit and ownership interest in the Patents-in-Suit; (b) the economic value of UniHome's proprietary ornamental designs, which Chuan Chen appropriated through the fraudulently obtained patents; (c) lost revenue and profits from the disruption and impairment of UniHome's sales through the UniHome Storefronts and other distribution channels as a result of the Related Georgia Action and the Georgia Evergreen Action; (d) the costs and commercial disruption caused by the he Related Georgia Action and the Georgia Evergreen Action; (e) reputational harm from being associated with anonymous counterfeit sellers in a Schedule A litigation; and (f) the costs of this litigation.

126. Chuan Chen's fraud was willful, malicious, and conducted with conscious disregard for UniHome's rights. UniHome is entitled to compensatory damages, punitive damages, and equitable relief, including the imposition of a constructive trust, and such other relief as the Court deems just and proper.

## COUNT VI: MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION
### (Against Netvue and Chuan Chen)

127.    UniHome re-alleges and incorporates by reference paragraphs 1 through 126 above as if fully set forth herein.

128.    This Count is asserted under the *Walker Process* doctrine. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965) (enforcement of a patent obtained by knowing and willful fraud on the Patent Office may constitute monopolization or attempted monopolization in violation of Section 2 of the Sherman Act).

129.    Netvue obtained the Patents-in-Suit through knowing and willful fraud on the United States Patent and Trademark Office. Specifically, Netvue and/or its Chairman, Chuan Chen, submitted to the USPTO inventor's oaths or declarations attesting that Chuan Chen was the original and sole inventor of the ornamental designs claimed in the Patents-in-Suit, when Netvue and Chuan Chen knew that the ornamental designs were conceived by UniHome's employees. Netvue and Chuan Chen further failed to disclose to the USPTO material information concerning UniHome's design contributions, prototype development, and prior public disclosure at the 133rd Canton Fair in April 2023.

130.    The fraud on the USPTO was knowing and intentional. At the time the patent applications were filed in August 2023, Netvue and Chuan Chen had actual knowledge that: (a) UniHome's employees had independently designed, developed, and built all prototypes (V1.0 through V4.0) embodying the claimed ornamental features; (b) Chuan Chen had personally visited UniHome's facilities and viewed UniHome's prototypes; (c) Netvue's own Deputy General Manager, Youle Hu, had expressly acknowledged that the ornamental design decisions were UniHome's; (d) Netvue's contributions were limited to functional feedback regarding camera placement, water resistance, and camera angle; and (e) UniHome had publicly displayed prototype

37

V2.0 at the 133rd Canton Fair months before the filing date. Despite this knowledge, Netvue caused Chuan Chen to be listed as the sole inventor, thereby obtaining patents to which Netvue was not entitled.

131.    The relevant product market is the market for smart bird feeders with integrated cameras sold in the United States, as defined in paragraphs [77 through 81] above.

132.    The relevant geographic market is the United States.

133.    Netvue possesses monopoly power in the Relevant Market, or alternatively, there is a dangerous probability that Netvue will achieve monopoly power. The Patents-in-Suit, if valid and enforceable, would exclude all competitors from manufacturing or selling bird feeders incorporating the standard design configuration that defines the product category. Specific indicia of Netvue's monopoly power or dangerous probability thereof include: (a) Netvue has asserted the Patents-in-Suit against a total of 47 or more defendants across five separate patent infringement actions, demonstrating its ability to exclude a substantial portion of competitors; and (b) the breadth and aggressiveness of Netvue's enforcement campaign has had a chilling effect on market entry by potential competitors. Netvue's enforcement of the Patents-in-Suit against defendants in the Related Georgia Action, Georgia Evergreen Action, Illinois Nafnti Action, Illinois GoodingStore Action, and Illinois Kingloong Action demonstrates Netvue's intent and ability to use these patents and related patents to exclude competitors and maintain or achieve monopoly power.

134.    Netvue has willfully acquired, maintained, or attempted to acquire monopoly power in the Relevant Market through exclusionary and anticompetitive conduct, specifically: (a) obtaining the Patents-in-Suit through knowing fraud on the USPTO; (b) enforcing those fraudulently obtained patents against UniHome and other competitors in the Related Georgia

Action, knowing that the patents were procured by fraud; (c) employing aggressive "Schedule A" litigation tactics against legitimate competitors, including Netvue's own development partner, to suppress competition through the threat of injunctive relief and damages; (d) falsely alleging in the Related Georgia Action that no license or authorization had been granted, when Netvue's own Chairman had expressly authorized UniHome to sell the products at issue; (e) filing the Georgia Evergreen Action against UniHome's authorized distribution agent, Evergreen Enterprise of Virginia LLC, as part of a deliberate strategy to encircle and eliminate UniHome at every level of the distribution chain; and (f) filing five separate patent infringement actions within a two-month period (November 14, 2025 through January 21, 2026) asserting fraudulently obtained design patents against a combined total of 47 or more defendants, constituting a coordinated enforcement campaign designed to sweep competitors from the Relevant Market.

135.    Netvue's conduct constitutes monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, or, in the alternative, attempted monopolization in violation of the same section. *See Walker Process*, 382 U.S. at 177.

136.    To establish attempted monopolization in the alternative, UniHome alleges: (a) Netvue engaged in anticompetitive conduct—specifically, the procurement of patents through fraud on the USPTO and the knowing enforcement of those fraudulently obtained patents against competitors; (b) Netvue acted with the specific intent to monopolize the Relevant Market; and (c) there is a dangerous probability that Netvue would achieve monopoly power in the Relevant Market absent judicial intervention.

137.    As a direct and proximate result of Netvue's violations of Section 2 of the Sherman Act, UniHome has been injured in its business and property, including but not limited to: (a) lost revenue from the disruption and impairment of UniHome's sales through the UniHome

Storefronts and other distribution channels; (b) lost profits from the suppression of competition in the Relevant Market through enforcement of fraudulently obtained patents; (c) the costs and commercial disruption caused by the Related Georgia Action; (d) reputational harm and loss of customer goodwill; (e) the chilling effect on UniHome's retail partnerships and distribution relationships; and (f) the costs of this litigation. UniHome's injuries are the type of injuries that the antitrust laws were designed to prevent, and UniHome is an efficient enforcer of the antitrust laws because it is a direct competitor of Netvue in the Relevant Market that has been directly harmed by Netvue's exclusionary conduct.

138.     Chuan Chen is individually liable for the antitrust violations alleged herein. Under the Sherman Act, individual corporate officers may be held personally liable for antitrust violations where they personally participated in, directed, or authorized the anticompetitive conduct. Chuan Chen personally participated in the fraud on the USPTO by signing false inventor's oaths, personally directed Netvue's enforcement campaign against UniHome and other competitors, and personally stood to benefit from the monopolization of the Relevant Market. Chuan Chen's personal participation and involvement in the predicate fraud and the subsequent enforcement of the fraudulently obtained patents render him individually liable under Section 2 of the Sherman Act.

139.     Pursuant to the Clayton Act, 15 U.S.C. § 15 (a), UniHome is entitled to recover threefold the damages sustained, together with costs of suit and reasonable attorneys' fees.

140.     Pursuant to the Clayton Act, 15 U.S.C. § 26, UniHome is further entitled to injunctive relief to prevent and restrain Netvue's violations of Section 2 of the Sherman Act, including an injunction prohibiting Netvue from enforcing the Patents-in-Suit and from engaging in further anticompetitive conduct in the Relevant Market.

141.    UniHome reserves the right to assert additional antitrust claims or theories, including but not limited to claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, after conducting discovery.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff UniHome prays that the Court grant judgment as follows:

(a)     An order requiring that the U.S. Patent and Trademark Office correct inventorship of Patents-in-Suit;

(b)     A declaration that UniHome is the sole and exclusive owner of all right, title, and interest in and to the Patents-in-Suit, any related U.S. and foreign patent applications and resulting patents;

(c)     A declaration that UniHome, if not the sole owner, is a joint owner of all right, title, and interest in and to Patents-in-Suit, any related U.S. and foreign patent applications and resulting patents; and that UniHome is further entitled to a pro rata undivided interest in the patent applications and resulting patents;

(d)     In the event that UniHome is not declared the sole, or alternatively a joint, owner of all right, title, and interest in the Patents-in-Suit  and any related patent, a declaration that Patents-in-Suit and any related U.S. and foreign patent applications and resulting patents are unenforceable due to Netvue's inequitable conduct during the prosecution of the Patents-in-Suit;

(e)     An injunction requiring Netvue to assign to UniHome any and all patent applications and resulting patents that reflect, incorporate, or are based on UniHome's Smart Bird Feeder design;

(f)     An injunction requiring Netvue to execute the paperwork necessary for UniHome's participation in the prosecution of any related patent application before the USPTO and any foreign Patent Office at which any related patent application may be pending;

(g)       An injunction requiring that Netvue assign all right, title, and interest in and to Patents-in-Suit and any related U.S. and foreign patent applications and resulting patents;

(h)       An injunction which prevents Netvue from using, licensing, or otherwise exploiting UniHome's smart bird feeder design and technologies, including but not limited to, benefitting from any patent or patent applications that are in any way based on UniHome's smart bird feeder design and technology;

(i)       Compensatory damages against Chuan Chen, individually, for actual fraud, in an amount to be determined at trial;

(j)       Punitive damages against Chuan Chen, individually, for his willful and fraudulent conduct, in an amount sufficient to deter similar misconduct;

(k)       Imposition of a constructive trust on the Patents-in-Suit and any proceeds, royalties, or revenues derived therefrom in favor of UniHome;

(l)       Imposition of a constructive trust on Chuan Chen's inventorship interest and any personal economic benefits derived from the Patents-in-Suit, including but not limited to royalties, equity interests, and other compensation;

(m)       An accounting of all revenues, profits, and other benefits derived by Netvue from the Patents-in-Suit and from products embodying UniHome's ornamental designs;

(n)       A declaration that UniHome does not infringe U.S. Design Patent Nos. D1,059,694, D1,060,865, or D1,085,564 by reason of UniHome's ownership or co-ownership interest in the Patents-in-Suit;

(o)       Treble and damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, for Netvue's violations of Section 2 of the Sherman Act;

42

(p)        Injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, prohibiting Netvue from enforcing the Patents-in-Suit and from engaging in further anticompetitive conduct in the market for smart bird feeders with integrated cameras sold in the United States; and

(q)        For costs and reasonable attorneys' fees incurred in connection with this and related actions to be paid by Defendants;

(r)        For a finding that this case is exceptional under 36 U.S.C. § 285;

(s)        Such further relief that the Court deems just and proper.

## JURY DEMAND

Trial by jury is demanded for all claims and issues so triable in this action.

DATED: April 24, 2026                      Respectfully submitted,

By:   */s/  Joshua Hartman*
      Joshua Hartman (VA #77894)
      **MERCHANT & GOULD P.C.**
      1900 Duke Street, Suite 600
      Alexandria, VA 22314
      Telephone: (612) 332-5300
      jhartman@merchantgould.com

      Thomas J. Leach
      *Pro Hac Vice Forthcoming*
      **MERCHANT & GOULD P.C.**
      150 South Fifth Street, Suite 2200
      Minneapolis, MN 55402
      Telephone: (612) 332-5300
      E-mail: tleach@merchantgould.com

      Tianqin Zhao
      *Pro Hac Vice Forthcoming*
      **YOUNGZEAL LLP**
      9355 John W Elliott Dr, STE 25555,
      Frisco, Texas 75033
      Telephone: (717) 440-3382

43

zhao@yzlaw.com

*Attorneys for Plaintiff Zhejiang*
*UniHome Technology Co., Ltd.*